OPINION OF THE COURT
George B. Ceresia, Jr., J.
*795 Plaintiff alleges in his first of two causes of action that the City of Troy breached his employment contract when it failed to abide by the provisions of General Municipal Law § 207-m by providing plaintiff with increases to his compensation, knowing that plaintiff relied upon the City’s promise to abide by General Municipal Law § 207-m. Plaintiff alleges in his second cause of action that the City of Troy violated his statutory, common-law, civil and property rights when it failed and refused to provide him with compensation required to be paid to the permanent full-time head of the Troy Police Department pursuant to General Municipal Law § 207-m. Plaintiff now moves for an order striking defendant’s answer and for an award of summary judgment as to defendant’s liability. Defendant opposes the motion and cross-moves for permission to amend its answer.
The court is mindful that summary judgment is a drastic remedy which should not be granted where there is any doubt as to the existence of a triable issue (Sternbach v Cornell Univ., 162 AD2d 922, 923 [3d Dept 1990]). The focus should be on issue identification rather than issue determination (Sternbach v Cornell Univ., supra). The proponent of a summary judgment motion must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence in admissible form to demonstrate the absence of any material issues of fact (see, Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Alvarez v Prospect Hosp., 68 NY2d 320, 324 [1986]; Ayotte v Gervasio, 81 NY2d 1062 [1993]). Once such a showing has been made, the burden shifts to the party opposing the motion for summary judgment to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action (Zuckerman v City of New York, supra; Alvarez v Prospect Hosp., supra; see also Wahila v Kerr, 204 AD2d 935, 936-937 [3d Dept 1994]). The court’s function is to view the evidence in the light most favorable to the party opposing the motion, giving that party the benefit of every reasonable inference, and determine whether there is any triable issue of fact outstanding (see, Matter of Suffolk County Dept. of Social Servs. v James M., 83 NY2d 178, 182 [1994]; Simpson v Simpson, 222 AD2d 984, 986 [3d Dept 1995]; Boyce v Vazquez, 249 AD2d 724, 725 [3d Dept 1998]).
General Municipal Law § 207-m (1) provides, in relevant part, that
“[notwithstanding the provisions of any general, special or local law or administrative code to the *796 contrary, and except in police departments which employ five hundred seventy-five or more permanent sworn police personnel,[1] whenever the base salary or other compensation of the permanent full-time police officer who is a member of a negotiating unit and who is the highest ranking subordinate to the head of the police department in such unit, is increased, the salary, as defined in subdivision two of this section, of the permanent full-time head of the police department shall be increased by at least the same dollar amount of the base salary increase received by such next subordinate police officer, and the other compensation, as defined in subdivision two of this section, of the permanent full-time head of the police department shall be increased to the same extent and with the same conditions as the other compensation received by the next subordinate police officer in the event that such subordinate officer’s other compensation is increased. The provisions of this section shall not apply to any head of a police department who is a member of a collective negotiating unit established pursuant to article fourteen of the civil service law.”[2]
The court finds that plaintiff has met his prima facie burden to show that he is entitled to benefits pursuant to General Municipal Law § 207-m commencing upon the effective date of his appointment to the position of Commissioner of Public Safety until the effective date of his retirement from the position of Police Commissioner.
In the first instance, the court finds that plaintiff has offered sufficient prima facie proof to show that he was the head of the Police Department of the City of Troy during his tenure as Commissioner of Public Safety and Police Commissioner. In support *797 thereof, plaintiff offers two copies of the personnel action forms signed by Mayor Mark Pattison appointing him to the positions of Commissioner of Public Safety and Police Commissioner. The form identifies his appointment to the position of Commissioner of Public Safety, effective December 31, 1996, as “permanent exempt” and his appointment to Police Commissioner, effective September 3, 1998, as “permanent (probationary).” Plaintiff attaches a copy of amendments to the Troy City Charter for the year 1998, which includes an amendment to section C-77 (B), entitled Commissioner of Public Safety. The amendment provides that
“(1) There shall be a Commissioner of Public Safety, who shall be head of the Department of Public Safety and shall have supervision and control of the Bureau of Police, the Bureau of Fire and the Bureau of Weights and Measures and a Bureau of Emergency Communications. The Commissioner shall be appointed by the Mayor, subject to confirmation by the City Council, to serve at the pleasure of the Mayor and he/she shall appoint, with the approval of the Mayor, and in conformity with the rules of the Municipal Civil Service Commission, a Chief of the Bureau of Police, a Chief of the Bureau of Fire and a Sealer of Weights and Measures and a Bureau of Emergency Communications.
“(2) Notwithstanding the above, the Mayor may appoint a Police Commissioner who shall be the Deputy Public Safety Commissioner and shall assume all the powers of the Public Safety Commissioner whenever he or she is absent or unavailable. If the Mayor appoints a Police Commissioner, then the position of Public Safety Commissioner shall not pay any salary.”[3]
Plaintiff also attaches a copy of the Troy Civil Service Commission’s new position duties statement which describes plaintiffs duties as the Commissioner of Police. Those duties included, inter alia, directing the activities of the Bureau of Police, preparing and managing the budget for the Bureau of Police and, “as the ranking Police Officer in the City,” managing *798 the regulation and movement of vehicular and pedestrian traffic in the City of Troy. The duties statement also delineates the names and titles of persons supervised by plaintiff, which includes the direct supervision of the Police Chief. In response to the identification of the “names andj titles of persons doing substantially the same kind and level of work as will be done by the incumbent of this new position,” the duties statement simply states “none.”
Plaintiff has also offered sufficient prima facie proof to show that the Police Chief was his highest ranking subordinate and a member of a negotiating unit, as required by General Municipal Law § 207-m. As previously discussed, plaintiff offers a copy of the 1998 amendments to the Troy City Charter and the Troy Civil Service Commission’s new position duties statement. The former document states, inter alia, that the Commissioner of Public Safety “shall have supervision and control of the Bureau of Police” and “shall appoint, with the ¡approval of the Mayor, ... a Chief of the Bureau of Police . . .The latter document identifies the Commissioner of Police “as the ranking Police Officer of the City” responsible for the direct supervision of the Police Chief. Plaintiff also offers a copy of defendant’s answer wherein the City admits to that portion ¡of the complaint which alleges that “the Police Chief of the City ¡of Troy is a member of the collective bargaining unit known as the Command Officer’s Association Troy, Inc. (COAT).”
In opposition, defendant argues, inter alia, that the position of Police Commissioner became vacant by operation of law when plaintiff failed to take and file his oath oi office pursuant to section 30 of the Public Officers Law.[4] Defendant further argues that as a consequence of plaintiffs failure to take and file his oath of office following his appointment, he became the de facto Police Commissioner, and held the position in a temporary capacity, rather than as the permanent héad of the police depart *799 ment pursuant to General Municipal Law § 207-m.[5] The court has considered defendant’s argument and finds that defendant has not met its burden to establish a triable issue of fact with respect thereto. More specifically, the court finds that even if plaintiff failed to take and file his oath of office in a timely fashion, he nonetheless is entitled to compensation pursuant to General Municipal Law § 207-m as the de facto, permanent head of the police department.
Public Officers Law § 15 declares valid the acts of a public officer done without, inter alia, taking or filing an official oath. This section has been interpreted to confer a right to “the statutory compensation therefor” (see, 1903 Ops Atty Gen 487; see also 1979 Ops Atty Gen 29). It stands to reason that a public official performing valid acts ought to be compensated for his service in accordance with any statutory entitlements for the period of time served. Moreover, contrary to defendant’s argument, a public official may be deemed to fill a position as a de facto, permanent officer. The term “de facto” is derived from principles of agency, and declares valid “the acts of one who carries out the functions of a public office under color of authority . . . as to third persons and the public, and hence immune from collateral attack, notwithstanding irregularities in the manner in which the officer was appointed” (see, Matter of County of Ontario v Western Finger Lakes Solid Waste Mgt. Auth., 167 AD2d 848, 849 [4th Dept 1990]). Thus, a public officer’s authority, be it de jure, de facto or actual, should be distinguished from the type of appointment, be it permanent, provisional or temporary (see, e.g., Matter of Town of Smithtown v Moore, 11 NY2d 238, 243-244 [1962] [wherein three de facto officers of original board were deemed empowered to act as a majority of permanent board]).
In the instant matter, it is undisputed that plaintiff was appointed “permanent (probationary)” to the position of Police Commissioner on September 4, 1998. Clearly the intent was to appoint plaintiff to fill a permanent position. According to the affidavit of Mark P. Pattison, the probationary period was to last for a period of 90 days so the Troy City Charter could be *800 amended to create the new position of Police Commissioner. Thereafter, on December 17, 1998, the conditions of plaintiffs probation were fulfilled when the Troy City Charter was amended to add the position of Police Commissioner. Defendant also argues that the position of Police Commissioner was temporary until made permanent by the New York State Civil Service Commission on December 14, 1999. The defendant’s argument in this regard is not persuasive for the same reason discussed above, namely, that plaintiff’s appointment on September 4, 1998 was to a permanent, albeit probationary, position.[6] Plaintiff continued to perform the duties of Police Commissioner until his retirement from service almost five years following his appointment. Thus, plaintiffs failure to take and file his oath of office following his appointment to Police Commissioner rendered his authority that of a de facto officer, but did not change the fact that he was appointed to fill a permanent position. Plaintiff should therefore receive the statutory compensation a permanent head of the police department is entitled to receive pursuant to General Municipal Law § 207-m.[7]
Defendant also seeks permission to amend its answer to include two additional affirmative defenses, namely, that plaintiff failed to take and file his oath of office for the position of Police Commissioner pursuant to Public Officers Law § 30, and that plaintiff did not comply with the mandates of sections C-50 and C-51 of the Troy City Charter.[8]
Under CPLR 3025 (b), leave to amend a pleading should be freely given (see, Edenwald Contr. Co. v City of New York, 60 NY2d 957 [1983]; Murray v City of New York, 43 NY2d 400 [1977]; Ward v City of Schenectady, 204 AD2d 779 [3d Dept 1994]). This, however, does not mean that motions to amend *801 are to be granted simply for the asking. There must be some demonstration of merit to the proposed amendment (see, Dodge v Victory Mkts., 199 AD2d 917, 919-920 [3d Dept 1993]; see also, Mathiesen v Mead, 168 AD2d 736 [3d Dept 1990]). A motion to amend will be denied where the cause of action or defense is plainly lacking in merit (see, Matter of Prendergast v Kingston City School Dist., 242 AD2d 773, 774-775 [3d Dept 1997]). The motion should be made upon the affidavit of a party having personal knowledge of the facts and circumstances (McDermott v Village of Menands, 74 AD2d 661 [3d Dept 1980]; Polak v Schwenk, 115 AD2d 142 [3d Dept 1985]; Martin v County of Madison, 88 AD2d 162 [3d Dept 1982]). Delay alone does not warrant a denial of a motion for leave to amend unless such delay is coupled with substantial prejudice to the nonmoving party (see, Edenwald Contr. Co. v City of New York, supra; New York State Health Facilities Assn. v Axelrod, 229 AD2d 864, 866 [3d Dept 1996]). Prejudice means “loss of a special right, a change in position, or significant trouble or expense that could have been avoided had the original pleading contained the proposed amendment” (New York State Health Facilities Assn. v Axelrod, supra at 866; see, Smith v Industrial Leasing Corp., 124 AD2d 413, 414 [1986]).
It is axiomatic that the amendment would not be allowed if it would not create any issues of fact. In light of the court’s prior ruling with respect to plaintiffs failure to take and file his oath of office for the position of Police Commissioner, defendant’s motion to amend its answer with respect thereto is denied. Additionally, defendant’s motion to amend the answer to include the requirements of sections C-50 and C-51 of the Troy City Charter is also denied. Sections C-50 and C-51 require that the City Council and the Mayor take certain action to confirm and make appointments. The court cannot permit defendant to use its agents’ inaction as a means to defeat plaintiff’s otherwise meritorious claim. In any event, the failure of the City Council to confirm the appointment, and of the Mayor to properly file proof of the appointment, would not affect the plaintiffs status as a de facto holder of the permanent position of Police Commissioner. The court has considered defendant’s remaining arguments and find them to be without merit.
Accordingly, it is ordered that plaintiff’s motion for partial summary judgment is granted with respect to defendant’s liability pursuant to General Municipal Law § 207-m commencing with the effective date of plaintiffs appointment to the posi *802 tion of Commissioner of Public Safety until the effective date of his retirement from the position of Police Commissioner; and it is further ordered that defendant’s motion to amend its answer is denied.

. The court notes the lack of any dispute with respect to the impact of this portion of General Municipal Law § 207-m upon plaintiffs motion and, accordingly, the court also considers it to be a nonissue.

. This section further provides that “other compensation shall mean all other forms of benefits which are credited to employees as a term of employment, which shall specifically include, but not be limited to, employer contribution to or payments of insurance or welfare benefits and employer contributions to pension or annuity funds. Overtime, holiday and shift differential pay shall not be considered as salary or other compensation unless by resolution, ordinance, special or local law the municipality, district or authority elects to include these items of compensation within the employment benefit package of the permanent full-time head of the police department.” (General Municipal Law § 207-m [2].)

. The court notes that the 1998 amendments did not change the duties of the Commissioner of Public Safety, as defined in the first paragraph, since the date of the prior amendment to this section in 1994. Accordingly, the duties of the Commissioner of Public Safety at the time the plaintiff was appointed to the position are as recited herein.

. Public Officers Law § 30 provides, in relevant part, that “Every office shall be vacant upon the happening of one of the following events before the expiration of the term thereof: . . .
“His refusal or neglect to file his official oath or undertaking, if one is required, before or within thirty days after the commencement of the term of office for which he is chosen, if an elective office, or if an appointive office, within thirty days after notice of his appointment!, or within thirty days after the commencement of such term . . .

. The court notes that defendant does not address the merit of plaintiffs motion for partial summary judgment with respect to his entitlement to benefits pursuant to General Municipal Law § 207-m during his tenure as Commissioner of Public Safety, but only as to his tenure as Police Commissioner. Thus, plaintiffs motion for partial summary judgment on the issue of liability must be granted with respect to his tenure as Commissioner of Public Safety.

. The court notes that the appointment form contains other appointment designations, including “provisional” and “temp./part time,” which were not designated in the instant matter.

. As a de facto official in a position which was vacant pursuant to the provisions of Public Officers Law § 30 because plaintiff failed to timely file his oath, the plaintiff could have been replaced at any time without cause and the requirement of any hearing (see, Matter of Comins v County of Delaware, 66 AD2d 966, 966-967 [3d Dept 1978]; see also, McDonough v Murphy, 92 AD2d 1022, 1024 [3d Dept 1983]). In the instant matter, the defendant did not exercise its right to oust plaintiff from his position as Police Commissioner, choosing instead to permit him to continue in his employment as Police Commissioner until his retirement therefrom.

. Section C-50 requires the Troy City Council to confirm appointments, and section C-51 requires the Mayor to file with the City Clerk written proof of appointments.